**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

LENNOX INDUSTRIES INC. and )
ALLIED AIR ENTERPRISES LLC, )
                           )
     Plaintiffs, )
                           )
     v. )     C.A. No. N19C-03-045 AML CCLD
                           )
ALLIANCE COMPRESSORS LLC, )
                           )
     Defendant. )

Submitted: May 19, 2020
Decided: August 10, 2020

**ORDER**

**Plaintiffs' Motion to Dismiss Counts I and II of Defendant's Counterclaims:
GRANTED**

1.    This dispute arises from the interpretation of a minimum purchase obligation in an air conditioner compressor purchase and supply agreement. The parties' agreement required the buyer to make certain minimum purchases from the seller based on an annually calculated amount. A disagreement arose between the parties in 2017 regarding the method for calculating that minimum purchase amount, specifically whether the amount is based upon (i) a percentage of the types of compressors manufactured by the seller, or (ii) all compressor types, including those not manufactured by the seller.

2.    After following the contractually required pre-suit dispute resolution process and engaging in unsuccessful mediation, the buyer filed this action seeking

declaratory judgment regarding the disputed contract term. The seller then asserted three counterclaims: (i) breach of contract, (ii) anticipatory repudiation, and (iii) declaratory judgment. The buyer moved to dismiss the seller's breach of contract and anticipatory repudiation counterclaims, arguing those counterclaims are not ripe because the seller did not first submit them to the dispute resolution process contained in the parties' agreement. The pending motion requires the Court to determine whether the parties' submission of the contractual interpretation issue to the pre-suit dispute resolution process means that the parties may avoid such dispute resolution for all "related" issues, such as whether buyer presently is in breach or has repudiated the contract. For the reasons that follow, I conclude the seller's breach of contract and anticipatory repudiation counterclaims must be dismissed as unripe because the agreement's language requires the parties first to submit each dispute to the contractual resolution process, even if those disputes are related factually or legally.

## FACTUAL BACKGROUND

3. Defendant Alliance Compressors LLC ("Alliance") manufactures compressors for residential and commercial air conditioners. Alliance has several members, including Plaintiff Lennox Industries Inc., and its subsidiary, Allied Air Enterprises LLC (collectively, "Lennox"). The parties executed the Compressor

2

Purchase and Supply Agreement (the "PSA") on December 31, 1996.[1] Under the PSA's Percentage Purchase Obligation provision, Lennox is required to make annual compressor purchases from Alliance of no less than a contractually defined amount. That Percentage Purchase Obligation is calculated annually by multiplying Lennox's "Total Usage" of compressors by the Percentage Purchase Obligation contained in the contract. In fall 2017, the parties began to disagree over the PSA's construction, specifically the definition of Lennox's Percentage Purchase Obligation. The parties do not agree about whether "Total Usage" includes all the compressors Lennox uses within a certain size range or only the types of compressors Alliance manufactures.

4.     The PSA's Dispute Resolution and Mediation ("DRM") provisions, incorporated from the operative Alliance LLC Agreement, require that "[e]very dispute whatsoever that may arise between [Alliance's] Members or their nominees, designees or other representatives with respect to the subject matter of this Agreement shall be referred for resolution as provided in this Section 16.1."[2] The DRM provisions outline three required steps to the dispute resolution process. First, the dispute is submitted to the management committee.[3] Next, if the dispute is not

---

[1] Pls.' Br. in Support of Mot. to Dismiss Def.'s Counterclaims (hereinafter "Mot. to Dismiss"), Ex. 3 AC/Lennox Compressor Purchase and Supply Agreement (hereinafter "PSA").
[2] *See id.*, Ex. 4 Alliance Compressors LLC Amended and Restated Limited Liability Company Agreement May 21, 1999 (hereinafter "LLC Agreement"), Art. XVI § 16.1 (hereinafter "Section 16.1").
[3] Section 16.1(a).

resolved, it is referred to the dispute resolution committee.[4] Finally, if the dispute still is not resolved, it is submitted to non-binding mediation.[5] Litigation only may be commenced if the required mediation fails to resolve the dispute.

5.    After the contract interpretation dispute arose, Lennox followed the three DRM steps, each of which proved unsuccessful in resolving the dispute. The parties submitted the following issue to the DRM:

> What is the proper interpretation of the minimum purchase obligation under the AC/Lennox Compressor Purchase and Supply Agreement dated December 31, 1996? More specifically, does Lennox's purchase commitment formula include all compressors it purchases and utilizes or is the formula limited to the types of compressors manufactured by Alliance Compressors?[6]

After the parties mediated that issue without reaching an agreement, Lennox filed suit in this Court on March 5, 2019, seeking declaratory judgment to resolve the meaning of the disputed contract term.

6.    Alliance then filed an action in the Court of Chancery on March 7, 2019, which largely was duplicative of its counterclaims now pending here. In the Chancery complaint, Alliance brought claims for breach of contract, anticipatory repudiation, and declaratory judgment regarding the Percentage Purchase Obligation calculation. The Court of Chancery dismissed Alliance's claim on January 6, 2020,

---

[4] *Id.*
[5] Section 16.1(b).
[6] *See* Mot. to Dismiss, Ex. 6.

concluding that the court lacked subject matter jurisdiction because Alliance did not allege any equitable remedy.[7] Alliance then reasserted those claims as the counterclaims now before this Court.

7. Lennox contends Alliance's breach of contract and anticipatory repudiation counterclaims[8] must be dismissed because (i) they are not ripe for adjudication and therefore should be dismissed for lack of subject matter jurisdiction; and (ii) even if the claims were ripe for consideration, Alliance failed to state claims for anticipatory repudiation or breach of contract.

8. Alliance argues the parties exhausted the DRM process with respect to the contract interpretation issue, and that "[t]here is no requirement in the contract at issue that the parties specifically mediate each and every *claim* or *remedy* that Alliance may pursue based on this singular dispute."[9] Alliance contends the dispute only must "relate to" whether a party has breached the PSA. Regarding the anticipatory repudiation claim, Alliance argues Lennox's statement "that it would no longer satisfy the Purchase Commitment Percentage" in the PSA according to the parties' past interpretation of that term constitutes anticipatory repudiation.[10]

---

[7] The Court of Chancery therefore did not reach Lennox's ripeness argument, which it now reasserts here.

[8] Alliance confirmed at oral argument it is not seeking specific performance. Therefore, the motion to dismiss regarding Count III, declaratory judgment, is moot. That claim may proceed.

[9] Def.'s Opp'n to Pls.' Mot. to Dismiss Counterclaims (hereinafter "Def.'s Opp'n) 1.

[10] *Id.* at 1-2.

## ANALYSIS

9. Ripeness is a threshold issue.[11] Alliance, as counterclaim plaintiff, "bear[s] the burden of demonstrating that [its] claims are ripe, and the court may consider documents outside the complaint on a motion to dismiss for lack of subject matter jurisdiction."[12] This Court lacks jurisdiction to consider an unripe claim.[13]

10. The parties do not dispute that the DRM provisions are enforceable. Delaware courts routinely enforce pre-suit dispute resolution requirements to which parties contractually have agreed.[14] A claim is not ripe for consideration unless parties first exhaust an applicable contractual pre-suit dispute resolution process.[15] Moreover, the failure to follow contractually mandated dispute resolution procedures constitutes a material breach of the contract.[16] This Court will dismiss claims when a party fails to satisfy those contractual obligations.[17]

---

[11] *Cedarview Opportunities Master Fund, L.P. v. Spanish Broad. Sys., Inc.*, 2018 WL 4057012, at *20 (Del. Ch. Aug. 27, 2018).

[12] *Id.* at *21.

[13] *Id.* at *20.

[14] *Fernstrom v. Trunzo*, 2017 WL 6028871, at *4 (Del. Ch. Dec. 5, 2017).

[15] *Id.* (finding claims not ripe for judicial review because the plaintiff did not comply with contractually mandated pre-litigation mediation process, which constituted "an enforceable condition precedent to litigation").

[16] *Millsboro Fire Co. v. Constr. Mgmt. Serv., Inc.*, 2009 WL 846614, at *4 (Del. Super. Mar. 31, 2009) ("Failure to submit claims to the architect, as a condition precedent to dispute resolution or litigation, is a material breach of contract."); *Commonwealth Constr. Co. v. Cornerstone Fellowship Baptist Church, Inc.*, 2006 WL 2567916, at *19 (Del. Super. Aug. 31, 2006) ("Cornerstone materially breached the Agreement by not submitting its claims to the Architect as a condition precedent to litigation.").

[17] *Millsboro*, 2009 WL 4017766, at *1 ("[T]he Court reiterates that the interior concrete claims were never presented in writing to the architect, as required by the contract. Thus, the summary judgment is granted in favor of [the defendant] on the interior concrete claims.").

6

11. Section 16.1 of the LLC Agreement, incorporated into the PSA, requires that:

> Every dispute whatsoever that may arise between [Alliance's] Members or their nominees, designees or other representatives with respect to the subject matter of this Agreement shall be referred for resolution as provided in this Section 16.1.
>
> (a) *Dispute Submitted to Management Committee; Referral to Dispute Resolution Committee.* If there shall arise a dispute among [Alliance's] Members as to any matter arising from or in any way connected with their relationship as Members, or that is related to or otherwise connected with the subject matter of this Agreement, the subject matter of such dispute will be submitted to the Management Committee. The Management Committee in good faith shall strive to resolve such dispute. If, however, the Management Committee shall fail for any reason to resolve . . . any such matter in dispute to the mutual satisfaction of all of the members of the Management Committee . . . , then the Chairman of the Management Committee immediately shall refer the matter to a Dispute Resolution Committee . . . to be resolved thereby. . . . If, however, the Dispute Resolution Committee shall fail to resolve any matter in dispute . . . , then at the request of any or all Common Members, the dispute shall be submitted for mediation under Section 16.1(b).
>
> (b) *Mediation.* If the process described in Section 16.1(a) fails to resolve a dispute, then at the request of any Common Member, a panel consisting of three independent individuals, one selected by each Common Member, will be requested to analyze the nature of the dispute, make a non-binding recommendation, and mediate among the Members, all within a sixty (60) day period from the date the Dispute Resolution Committee shall have failed to resolve the dispute. If such mediation fails to produce a resolution then the following will apply: (i) if the dispute relates to the Operations or to any other matter within the authority of the Management Committee under Section 4.2, then any Common Member may declare that a fundamental difference exists for purposes of Section 13.1(b) . . . and (ii) if the dispute relates to the interpretation of this Agreement or to whether a Member has breached

7

its obligations hereunder, then any Member may commence litigation in accordance with Section 16.2.

12. Alliance argues the contractual language requires the parties to mediate a "dispute" or "matter[,]" but not every claim or remedy that might flow therefrom. Alliance relies on the "relates to" language in Section 16.1(b)(ii), arguing that the issue the parties mediated – i.e., how the minimum purchase obligation should be interpreted – clearly "relates to" whether Lennox was in breach of its obligations or repudiated the contract. That argument, however, is not a reasonable reading of the DRM and is inconsistent with Section 16.1's broad language. Section 16.1 defines "dispute" broadly, requiring the parties to mediate "every" dispute or matter "whatsoever[.]" Section 16.1(b) makes clear that a dispute could include matters of either contract interpretation or contract breach.

13. Contrary to Alliance's argument, however, Section 16.1(b) does not define what matters must be submitted to DRM. Rather, Section 16.1's preamble and subsection (a) specify that all disputes "whatsoever" arising from or in any way connected to the agreement must be submitted to the DRM. Section 16.1(b) indicates what may happen if the DRM fails to resolve such a dispute. The fact that disputes *may* be related does not suggest parties only need to submit one such dispute to the DRM process.

14. This case illustrates why Alliance's interpretation is unreasonable. Although Lennox concedes the interpretation issue will inform the breach claim and

8

the two disputes therefore are related, the claims are distinct both legally and factually. Even if the Court ultimately adopts Alliance's interpretation of the meaning of Total Usage, it does not necessarily follow that Lennox has breached the agreement. In fact, the parties have not explored through mediation whether Lennox has met the Percentage Purchase Obligation under Alliance's interpretation of that term. Moreover, whether Lennox is repudiating the agreement is separate from the contractual interpretation issue, since Lennox may not be abandoning the contract by disputing the interpretation of a contract term or seeking declaratory judgment to resolve that dispute.[18] If the parties had mediated those disputes, they may well have resolved either the breach of contract or anticipatory repudiation issue, even though they could not resolve the related interpretation question.

15. The contractual interpretation issue is the only dispute that was subjected to the DRM process and therefore is the only issue ripe for the Court's consideration. The motion to dismiss Counts I and II of Alliance's counterclaim is granted without prejudice to Alliance re-asserting its counterclaims once Alliance has satisfied the pre-suit dispute resolution process.

---

[18] *See ION Geophysical Corp. v. Fletcher Int'l, Ltd.*, 2010 WL 4378400, at *18 (Del. Ch. Nov. 5, 2010) ("New York courts have stated that filing a declaratory judgment action to permit a court to interpret disputed terms in a contract is not likely to constitute an anticipatory repudiation except in the case where the claimant 'maintains an untenable construction of a contract on a matter of essential substance.'").

## CONCLUSION

For the reasons stated above, Plaintiffs' Lennox Industries Inc. and Allied Air

Enterprises, LLC's Motion to Dismiss Counts I and II of Defendant's Counterclaims

is **GRANTED WITHOUT PREJUDICE. IT IS SO ORDERED.**

Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    Richard P. Rollo, Esquire
       Travis S. Hunter, Esquire
       Alexandra M. Ewing, Esquire
       Jon E. Abramczyk, Esquire
       D. McKinley Measley, Esquire
       Alexandra M. Cumings, Esquire